FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2006 JAN 20  AM 9: 47

CLERK _____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

STATESBORO DIVISION

| | |
|---|---|
| "BOXER X," ) | |
| ) | |
| a/k/a STANLEY FARLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 605-54 |
| ) | |
| ERIC HEMPHILL et al., ) | |
| ) | |
| Defendants. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate confined at Georgia State Prison ("GSP") in Reidsville, Georgia, filed a complaint under Title 42, United States Code, Section 1983. The Court screened the complaint pursuant to Title 28, United States Code, Section 1915A and ordered service of process on defendants. The Court has discretion under Title 28, United States Code, Section 1915(e)(2) to dismiss complaints filed by plaintiffs proceeding *in forma pauperis* at any time where the Court finds that the complaint fails to state a claim on which relief may be granted. The Court now will exercise such discretion and review plaintiff's claims in light of new Supreme Court precedent. For the reasons that follow, the Court **REPORTS** and **RECOMMENDS** that plaintiff's complaint be **DISMISSED** and that this civil action be

**CLOSED.**[1]

## I. BACKGROUND

According to plaintiff's complaint, the factual allegations of which the Court will accept as true for purposes of this review, plaintiff arrived at GSP on November 16, 2004, after being transferred from Ware State Prison ("WSP"). GSP is a "maximum security" prison, whereas Ware State Prison is a "close security" prison.[2] At GSP, prison officials placed plaintiff in the Special Management Unit ("SMU") of the prison.

Plaintiff's transfer was the result of an "altercation" with other inmates at WSP. According to plaintiff, however, he received no notice of disciplinary charges filed against him before being transferred. Compl. at 5. A GSP staff member did inform him after arriving at GSP that he had been accused of fighting with other inmates, and that accusation precipitated the transfer. Compl. at 6.

On November 24, 2004, defendant Sugg, a GSP disciplinary investigator, came to plaintiff's prison cell and spoke to him about the disciplinary charges filed against him. According to plaintiff, defendant Sugg did not present him with written notice of the charges.

---

[1] Plaintiff has filed a motion for injunctive relief, claiming that defendants have retaliated against him for filing his complaint and seeking relocation to another prison. Doc. 18. Because the Court herein recommends that plaintiff's complaint be dismissed, the Court also recommends that the motion for injunctive relief, Doc. 18, be **DENIED** as **MOOT**.

[2] A maximum security prison is the highest security level state prison in Georgia. A close security prison is the second-highest security level prison. Inmates housed at maximum security prisons are those "who pose a high escape risk or they may have a history of assaults against other inmates or staff. These inmates never leave the prison and require supervision at all times by one or more correctional officers." Georgia Department of Corrections, State Prisons, http://www.dcor.state.ga.us/CORR/StatePrisons/StatePrisons.html (Jan. 12, 2006).

2

Compl. at 7, 8. Plaintiff requested a GSP disciplinary staff advocate from defendant Sugg. Compl. at 9. Later that day, defendant Kennedy, a disciplinary staff advocate, visited plaintiff's prison cell and spoke to him about his charges. Plaintiff maintains that defendant Kennedy also did not provide him with written notice of his disciplinary charges. Compl. at 10.

Defendant Hemphill, a disciplinary hearing officer, came to plaintiff's cell on November 29, 2004, and informed plaintiff that he was there to conduct a disciplinary hearing. According to plaintiff, defendant Hemphill was unable to conduct the hearing because of the noise that other inmates were making. Defendant Hemphill told plaintiff that he would return later to finish the hearing. Plaintiff contends that he never returned. Compl. at 12.

Later the same day, plaintiff received a written disciplinary report charging him with causing injury to an inmate, threatening an inmate with a weapon, "Code B-5" verbal threatening, and failure to follow instructions. The report stated that a disciplinary hearing had been held earlier that day, and that plaintiff had been found guilty. Compl. at 13. As sanctions for his violations, plaintiff was given five years of disciplinary segregation in SMU, ninety days of phone restriction, and 360 days of "TPM extension." Compl. at 14.

Plaintiff appealed the disciplinary report to the GSP warden on December 1, 2004. The appeal was denied. He appealed again to the Georgia Department of Corrections Commissioner's Office on December 8, 2004. The Commissioner's Office found that the charge of causing injury to an inmate was not factually supported and mandated that the charge and resulting sanctions be removed from plaintiff's record. Despite the

3

Commissioner's Office finding, plaintiff is still in SMU at GSP. Compl. at 16.

## II. DISCUSSION

Plaintiff contends that the deprivation of written notice and a fair hearing on his disciplinary charges amounts to a violation of his procedural due process rights. In Wilkinson v. Austin, 125 S. Ct. 2384 (2005), the Supreme Court considered whether prisoners housed in an Ohio "supermax" prison had a liberty interest protected by the Fourteenth Amendment's Due Process Clause in avoiding assignment to the prison and, secondarily, whether Ohio's informal, non-adversarial procedures for placing inmates in the prison were sufficient to safeguard that liberty interest. In the prison, the only one of its kind in Ohio, inmates' lives were closely controlled and monitored, visitation was rare and occurred only through glass walls, and "inmates were deprived of almost any environmental or sensory stimuli and of almost all human contact." Id. at 2389. Placement in the prison lasted indefinitely, and prisoners otherwise eligible for parole lost their eligibility while incarcerated at the prison. Id.

In addressing whether an inmate possesses a liberty interest in not being confined at the supermax prison, the Court recognized that "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." Id. at 2393. "[A] liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations," however. Id. The Court in Sandin v. Conner, 515 U.S. 472 (1995), held that state-created liberty interests for a prisoner "will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected

4

manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 483-84.

The Wilkinson Court applied Sandin to find that the conditions at the Ohio prison do give rise to a liberty interest in their avoidance. In so finding, the Court noted that the indefinite duration of confinement and the disqualification for parole consideration that result from assignment to the supermax facility distinguish it from solitary confinement conditions that would not give rise to such a liberty interest. Wilkinson, 125 S. Ct. at 2395.

Having recognized a liberty interest, the Court noted that "the procedural protections to which [prisoners] are entitled are more limited than in cases where the right at stake is the right to be free from confinement at all." Id. at 2395. The Court noted that notice of the factual basis leading to consideration for placement and a fair opportunity for rebuttal "are among the most important procedural mechanisms for purposes of avoiding erroneous deprivations." Id. at 2396. The Court found Ohio's procedures for assignment to the supermax facility, which were informal, non-adversarial, and included several levels of review, were adequate to protect a prisoner's procedural due process rights. Id. at 2397-98.

Unlike the supermax facility in Wilkinson, GSP is not the only maximum security prison of its kind in Georgia, nor is it the only prison in Georgia with an SMU.[3] Also in contrast to the facility in Wilkinson, prisoners in GSP's SMU may receive visitors and go

---

[3]Coastal State Prison, Augusta State Medical Prison, Arrendale State Prison, and Pulaski State Prison are other maximum security prisons in Georgia. The latter three prisons also have SMU facilities. Georgia Department of Corrections, http://www.dcor.state.ga.us (Jan. 12, 2006).

to outdoor recreational yards during the day.[4] While the <u>Wilkinson</u> Court relied on the indefinite duration of stays in the supermax facility and the deprivation of parole opportunities, plaintiff here received five years in the SMU and is not eligible for parole under the terms of his sentence. Georgia Department of Corrections, http://www.dcor.state.ga.us (Jan. 12, 2006). For these reasons, the Court does not find plaintiff's incarceration in the SMU at GSP likely to create an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," and thus unlikely to implicate a liberty interest.

Because the Court is required to "take all reasonable inferences in favor" of plaintiff at this stage of litigation, <u>Magluta v. Samples</u>, 375 F.3d 1269, 1282 (11th Cir. 2004), however, the Court will assume, for purposes of this review, that conditions at SMU are more harsh than they appear in plaintiff's pleadings and that plaintiff does have a liberty interest in avoiding transfer to the SMU. The analysis now turns to whether such an interest was protected in this case.

From the face of plaintiff's complaint, it appears that prisoners assigned to the SMU at GSP for disciplinary reasons receive notice of the proceedings, the opportunity to be heard at a disciplinary hearing, the opportunity to appeal the initial decision to the prison warden, and another opportunity to appeal to the Georgia Department of Corrections Commissioner's Office. Plaintiff here claims that he was denied his initial disciplinary hearing and that he did not receive written notice of his charges until thirteen days after he arrived at GSP. He

---

[4] Plaintiff's own motion for a preliminary injunction mentions that he enjoyed trips to receive visitors and to an outdoor recreation yard as part of life in the SMU. Doc. 18.

took advantage of the opportunity to appeal the initial disciplinary decision and received partial relief from the initial charges and sanctions.

The Wilkinson Court emphasized notice of disciplinary charges and the fair opportunity to rebut those charges as the touchstones for the protection of a prisoner's liberty interest. Wilkinson, 125 S. Ct. at 2396; see also Carrera v. Nebraska Dept. Of Correctional Servs., 2005 WL 2042305, at *7 (D. Neb. Aug. 22, 2005) (finding prisoner's liberty interest protected in light of Wilkinson when plaintiff received notice and opportunity to be heard, but had no right to representation or staff assistance in presenting his defenses). While plaintiff complains of the lack of written notice of his charges, the Court finds no requirement that notice be written either in Wilkinson or elsewhere. Plaintiff concedes that he received oral notice of the basis of his charges soon after his arrival at GSP and in subsequent conversations with defendants. Plaintiff had at least three opportunities to rebut those charges in conversations with prison officials who either investigate such charges or conduct disciplinary proceedings.

Whether or not such notice and opportunity for rebuttal are sufficient, plaintiff did receive written notice of his charges on November 29, 2004. From that point, plaintiff had the opportunity to rebut those charges in appeals to the warden and to the Commissioner's Office. He took advantage of that opportunity, and he received relief from the Commissioner's Office. Even if the Court accepts as true plaintiff's assertion that defendants failed to afford him notice and an opportunity to be heard prior to the November 29, 2004, disciplinary report, plaintiff concedes in his complaint that he received notice and the opportunity to be heard thereafter. Such process is sufficient to protect a prisoner's interest

in avoiding the "atypical and significant" hardships of life in the SMU at GSP. Accordingly, plaintiff's claims should be dismissed.

### III. CONCLUSION

For the foregoing reasons, the Court finds that plaintiff's complaint fails to state a claim on which relief may be granted. The Court recommends that his motion for injunctive relief be **DENIED** as **MOOT**, that his complaint be **DISMISSED**, and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this ___ day of January, 2006, at Augusta, Georgia.

_____
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE